**THE HEADACHE AND PAIN CENTER, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civil Action No. 97–2415–KHV.**

United States District Court, D. Kansas.

Oct. 15, 1998.

J. Tyler Peters, Payne & Jones, Chtd., KS, for plaintiff.

Janice M. Karlin, Office of United States Attorney, Kansas City, KS, for defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter is before the Court on plaintiff's *Brief In Support Of Reversal Of Administrative Agency* (Doc. # 13) filed February 23, 1998 and defendant's *Motion For An Order Affirming The Secretary* (Doc. # 16) filed May 18, 1998. Plaintiff seeks Medicare benefits of approximately $43,530, which defendant has denied through the Health Care Financing Administration ("HCFA").

### Facts

Plaintiff is an ambulatory surgical center ("ASC") where physicians perform pain management procedures, often on Medicare patients. After a physician performs such a procedure, plaintiff submits a claim for reimbursement under Medicare Part B coverage. Under 42 U.S.C. § 1395l(i)(1), defendant provides a list of covered surgical procedures for which ambulatory surgical centers can receive reimbursement. If the procedure performed at plaintiff's facility is on that list, defendant will reimburse plaintiff. Each procedure on the list has a separate code that distinguishes it from other procedures, so that defendant may quickly identify the procedure for which plaintiff seeks reimbursement. Defendant's list uses the codes provided by the *Health Care Financing Administration Common Procedure Coding System* ("HCPCS"). The HCPCS system borrows code numbers created by the American Medical Association ("AMA") for its *Current Procedural Terminology* (4th Ed.) ("CPT–4") system.

After May 21, 1987, Medicare Part B coverage allowed plaintiff to receive reimbursement for epidural nerve blocks. CPT–4 initially used the following codes for these procedures: (1) 62278–"injection of anesthetic substance, diagnostic therapeutic; epidural or caudal, single" and (2) 62289–"injection of substance other than anesthetic, contrast, or neurolytic solutions; epidural or caudal." In 1989, the AMA changed the CPT–4 descriptors of 62278 and 62289 by replacing the words "epidural or caudal" with "lumbar or caudal epidural." As a result, CPT–4 had no code for cervical and thoracic epidurals. Plaintiff therefore asked the local Medicare office which code it should use for such procedures. Defendant told plaintiff to use the numbers it had previously used. Plaintiff did so and defendant reimbursed plaintiff for thoracic and cervical epidurals.

On February 8, 1990, in anticipation of changes to CPT–4, the HCFA issued a proclamation which discussed future reimbursement of ambulatory surgical centers. The proclamation read in part:

Future changes in CPT–4 (that is, 1990 and beyond) are likely to have some effect on the list of covered ASC procedures. Revisions in terminology will be incorporated into the list. The additions of new codes will be incorporated into the list. The additions of new codes that represent minor variations of codes that are already on the list of covered services will be added to the list. When codes that are on the current list are deleted, we will attempt to cross-refer those deletions to other CPT–4 codes. If those codes are already on the list, there will be no effect on payment.

55 *Fed.Reg.* 4539 (1990).

On December 31, 1991, defendant published its updated list of reimbursable surgical procedures for ambulatory surgical centers, which included the old 62278 and 62289 categories, which defendant had apparently construed as covering cervical and thoracic epidurals (even though the CPT–4 code did not expressly so provide). On January 1, 1992, the AMA published its revised CPT–4 coding system which added two codes, 62275 and 62298, that specifically covered cervical and thoracic epidurals. Beginning in 1992, defendant used the new codes, instead of codes 62278 and 62289, to describe cervical and thoracic epidurals Because defendant had published its revised list of reimbursable procedures one day before the AMA had created its new codes, the new AMA codes were not on defendant's list of reimbursable procedures. Consequently, after January 1, 1992, plaintiff no longer received reimbursement for cervical or thoracic injections. When plaintiff asked why, defendant said that codes 62275 and 62298 covered these "new procedures." Defendant later admitted that these procedures were not actually new. Defendant also acknowledged that for purposes of calculating the fees for physicians, it was

cross referencing the new codes to the older 62278 and 62289 codes, and allowing coverage. Thus, while physicians who performed thoracic and cervical epidurals received reimbursement for the procedures, plaintiff did not.

Plaintiff, as an assignee of benefits, sought relief through agency procedures. Defendant broke plaintiff's claims into three different groups: group 1 (docket number 000–73–0097), group 2 (docket number 000–73–0077), and group 3 (docket number 000–74–0017). Each group includes multiple claims.

On January 17, 1996, the administrative law judge ("ALJ") denied payment for plaintiff's group 3 claims. The ALJ found that code 62298 best described plaintiff's procedures and that that code was not a covered surgical procedure when performed in an ambulatory surgery center. (Tr. at 22). Plaintiff sought review before the Medicare appeals board. On February 23, 1996, an ALJ entered a final decision which denied plaintiff's group 1 claims for the same reasons. Plaintiff sought review by the Medicare appeals board. On April 8, 1996, the ALJ denied payment for plaintiff's group 2 claims. Plaintiff did not request review by the Medicare appeals board. On June 25, 1997, the Medicare appeals board vacated the ALJ's final decision regarding most of the group 3 claims[1] because the appeals board had lost the claim files and lacked sufficient records to review the claims. On June 26, 1997, the Medicare appeals board notified plaintiff of its right to judicial review regarding its group 1 claims and the sole claim from group 3 that defendant denied (claim 379–01–8350A). Plaintiff has not received a right to sue letter regarding group 2 claims. Plaintiff's remaining group 3 claims remain pending before defendant.

## Standard of Review

█ Plaintiff argues that § 706 of the Administrative Procedure Act provides the proper standard of review. See 5 U.S.C. § 706. This might be true if plaintiff had brought its claim under the federal question statute, 28 U.S.C. § 1331. See *Downtown Med. Center/Comprehensive Health Care Clinic v. Bowen*, 944 F.2d 756 (10th Cir. 1991); *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). Plaintiff brings this claim, however, under 42 U.S.C. § 1395ff. Section 1395ff limits judicial review to the standards set out in § 405(g). 42 U.S.C. § 1395ff(b)(1)(C). Therefore, the proper standard of review is provided by 42 U.S.C. § 405(g). "Looking at the administrative record as a whole, we may overturn the Secretary's decision only 'if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or contrary to law.'" *Chipman v. Shalala*, 90 F.3d 421, 422 (10th Cir.1996) (quoting *Hennepin County Med. Ctr. v. Shalala*, 81 F.3d 743, 748 (8th Cir.1996)).

## Analysis

### A. Exhaustion of Remedies

█ Defendant argues that it has not issued a final decision on plaintiff's group 2 claims or most of plaintiff's group 3 claims. Judicial review is only proper under § 405(g) after defendant has issued a final decision on plaintiff's claims. *Heckler v. Ringer*, 466 U.S. 602, 605, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). For a final decision, plaintiff must exhaust all administrative levels of review. *Id.* at 606, 104 S.Ct. 2013. This includes review by defendant's appeals board. 20 C.F.R. § 404.981. 42 C.F.R. §§ 405.701(c), 405.724 (1983). In this case, plaintiff did not seek appellate review of the ALJ's denial of plaintiff's group 2 claims. Plaintiff has not exhausted the final level of review and has therefore not received a final decision on the group 2 claims. The appeals board vacated the ALJ's determination of most of plaintiff's group 3 claims and remanded these claims for another ALJ ruling. At this time, no ALJ has issued such a ruling. Defendant has therefore not issued a final decision on these claims.

Plaintiff can only avoid the requirement of a final decision if it can show that (1) exhaustion would be futile, (2) irreparable harm would result, and (3) plaintiff has a colorable

---

1. The vacated claims include numbers 000–74–0315, 000–74–0154, 000–74–0155, 000–74–0156, 000–74–0157, 000–74–0158, 000–74–0159, 000–74–1060, 000–74–0398, 000–74–0399, 000–74–0400, and 000–74–0401.

constitutional claim which is collateral to the substantive claim of entitlement. *Koerpel v. Heckler,* 797 F.2d 858, 862 (10th Cir.1986). While it is apparent to the Court that further administrative proceedings will yield the same denial of reimbursement, we do not believe that plaintiff will suffer any irreparable harm by exhausting defendant's process. Plaintiff does not allege any harm that will occur if the Court does not immediately consider the unexhausted claims. The only harm that the Court can ascertain is the continuing lack of payment since 1992. While plaintiff's argument of judicial economy makes sense, it does not rise to the level of irreparable harm. In addition, plaintiff does not allege a constitutional claim. Once plaintiff exhausts its administrative remedies, it can properly bring these claims before this Court. At this time, the Court lacks subject matter jurisdiction over plaintiff's group 2 claims and the vacated group 3 claims.

Plaintiff has exhausted all administrative remedies regarding the group 1 claims and claim 397–01–8350A. Plaintiff alleges that the ALJ erred in both of these actions (1) by refusing to consider or follow the express policy of the HCFA; (2) by failing to consider plaintiff's reliance on continued reimbursement; and (3) because the ALJ lacked sufficient knowledge about the Medicare process.

### B. Refusal to Follow the Express Policy of the HCFA

■ Plaintiff argues that defendant failed to follow its stated policy, to the effect that: Future changes in CPT–4 (that is, 1990 and beyond) are likely to have some effect on the list of covered ASC procedures. Revisions in terminology will be incorporated into the list. The additions of new codes will be incorporated into the list. The additions of new codes that represent minor variations of codes that are already on the list of covered services will be added to the list. When codes that are on the current list are deleted, we will attempt to cross-refer those deletions to other CPT–4 codes. If those codes are already on the list, there will be no effect on payment. 55 *Fed.Reg.* 4539 (1990). Plaintiff argues that when CPT–4 added codes 62275 and 62298 on January 1, 1992, it deleted "one half of the spinal column" from the list of reimbursable procedures. Plaintiff argues that this deletion required defendant to cross-reference the former 62278 and 62289 codes to new 62275 and 62298 codes. Under the foregoing policy, however, defendant will not attempt to "cross-refer" to other CPT–4 codes unless the AMA has deleted codes on the current list. In this situation, the AMA did not delete codes 62278 and 62289, but only added codes 62275 and 62298. It is true that the addition of the new codes had the effect of deleting thoracic and cervical epidurals from codes 62278 and 62289, but the codes themselves were not deleted. The policy does not state that it will cross-refer when terminology is changed, even when a change in terminology causes some procedures to become non-reimbursable.

■ Plaintiff supports its argument by showing that defendant did cross-refer to determine reimbursement under the physician fee schedule. *See* 42 C.F.R. § 414.4. This evidence does not help plaintiff's position. Defendant's physician fee schedule is separate from its list of covered surgical procedures for ambulatory surgical centers; it does not fall within the policy that plaintiff cites. Defendant's actions show that it is possible to cross-refer the codes, but its policy regarding ambulatory surgical centers only allows cross-referencing when the AMA deletes codes. Because the AMA did not delete any codes, defendant's policy did not allow cross-referencing in this case. The ALJ therefore did not err by failing to follow defendant's policy.

### C. Failure to Consider Plaintiff's Reasonable Reliance

■ Plaintiff argues that the ALJ erred by not considering the fact that plaintiff "reasonably rel[ied] on the representations of Medicare." Plaintiff argues that it did not have any reason to know that it would no longer receive reimbursement for cervical and thoracic epidurals. Plaintiff's argument appears to be that defendant should be estopped from denying benefits because of plaintiff's reliance. Plaintiff is not entitled to equitable relief when plaintiff would not be entitled to statutory relief. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 434, 110 S.Ct. 2465, 110 L.Ed.2d 387

(1990). The statutory list of covered procedures, however, does not clearly prevent plaintiff from reimbursement. Only defendant's interpretation of the list prevents reimbursement. While estoppel against the government is an extraordinary remedy, the Supreme Court has not completely prohibited the application of estoppel against the government. *Board of County Comm'rs v. Isaac*, 18 F.3d 1492, 1498 (10th Cir.1994).

Even if estoppel can apply to prohibit defendant from changing its interpretation, however, plaintiff fails to make the required showing. Plaintiff must show that defendant engaged in affirmative misconduct that caused plaintiff to rely on continued benefits. *Penny v. Giuffrida*, 897 F.2d 1543, 1546 (10th Cir.1990). Affirmative misconduct means an affirmative act of misrepresentation or concealment of a material fact. *Isaac*, 18 F.3d at 1499 (citing *United States v. Ruby Co.*, 588 F.2d 697, 703–04 (9th Cir. 1978)). Negligence, delay, inaction and failure to follow agency guidelines are not affirmative misconduct. *Id.* (citing *Fano v. O'Neill*, 806 F.2d 1262, 1265 (5th Cir.1987)). Plaintiff argues that its had six reasons why it relied on continued benefits: (1) the fact that defendant reimbursed physicians for these procedures; (2) defendant's stated policy to cross-refer deleted codes; (3) the fact that defendant left other reimbursable procedures off the list of covered procedures for ambulatory surgical centers on December 31, 1991; (4) the fact that defendant changed its interpretation of the list of covered procedures one day after the list was published; (5) defendant's recommendation that it use codes 62278 and 62289 after the AMA amended them in 1989; and (6) the fact that defendant reimbursed cervical and thoracic epidurals under codes 62278 and 62289 after 1989.

None of these reasons show affirmative misconduct by the defendant. Defendant's actions did not suggest that plaintiff would always receive benefits for cervical and thoracic epidurals. First, plaintiff did not have any reason to believe that it would be reimbursed simply because defendant reimbursed physicians for cervical and thoracic epidurals after 1992. The standards for reimbursing physicians and ambulatory surgical centers are not analogous. *See* 42 U.S.C. § 1395k, 1395l. Ambulatory surgical centers are not entitled to reimbursement for every procedure for which physicians receive reimbursement. Defendant only reimburses plaintiff if the performed procedure is on the list of covered surgical procedures for ambulatory surgical centers. Second, plaintiff had no reason to believe that it would be reimbursed based on defendant's policy to cross-refer deleted codes. As previously discussed, that policy did not apply in this case because the AMA did not delete any CPT–4 codes. Third, plaintiff had no reason to rely on the list of reimbursable procedures. While defendant's list expressly covered some procedures and expressly left off other procedures, it did not expressly include cervical and thoracic epidurals after the AMA's 1989 changes to CPT–4. Fourth, the timing of defendant's changed interpretation is not material. At any time during 1989 through 1992, defendant could have changed its interpretation. Both the December 31, 1991 list and its predecessor were equally ambiguous regarding thoracic and cervical epidurals. This ambiguity forced defendant to make an interpretation one way or the other. Defendant was free to change its interpretation at any time, even one day after publishing its new list. Fifth, defendant's statement in 1989 that it would reimburse thoracic and cervical epidurals under codes 62278 and 62289 does not amount to affirmative misconduct. Defendant based its statement on its interpretation of the list of covered procedures at that time. Defendant did not tell plaintiff that its interpretation would never change. Sixth, defendant's continued reimbursement after the AMA's 1989 changes to CPT–4 does not amount to affirmative misconduct. When defendant paid plaintiff's claims from 1989 through January 1, 1992, defendant followed its interpretation of the list of covered procedures. Defendant changed this interpretation of the list of covered procedures based on the AMA's clarification regarding which code covered cervical and thoracic epidurals. Defendant's actions do not show any affirmative misrepresentations or concealment of material facts.[2] Defendant did nothing to

---

**2.** Plaintiff alleges that after defendant changed its interpretation, it told plaintiff that cervical and thoracic epidurals were not covered because

cause plaintiff to believe that these procedures would always be covered. Defendant's actions therefore do not rise to affirmative misconduct in this case. Because of this, the ALJ did not err by not considering plaintiff's reliance on the fact that defendant previously reimbursed cervical and thoracic epidurals.

 It is possible to view plaintiff's reliance argument as claiming that defendant violated the notice and comment provisions of the Administrative Procedure Act. *See* 5 U.S.C. § 553. While such an interpretation appears to stretch plaintiff's arguments beyond their intended scope, the Court reaches the same result. After 1989, when the AMA removed cervical and thoracic epidurals from its descriptions of codes 62278 and 62289, defendant's published list of covered procedures was ambiguous. Even though the published list of procedures did not expressly cover cervical and thoracic epidurals, defendant interpreted codes 62278 and 62289 to cover them. After the AMA published codes 62275 and 62298, defendant changed its interpretation of codes 62278 and 62289 because the AMA's new codes specifically addressed cervical and thoracic epidurals. Such action constitutes an interpretive rule, not a legislative rule. *See Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 99, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995); *Warder v. Shalala,* 149 F.3d 73, 81 (1st Cir.1998). Because defendant's actions were interpretive, they fall within an exception to the APA's notice and comment requirement. *See* 5 U.S.C. § 553(b)(3)(A), (B).

**D. ALJ's Lack of Familiarity with the Medicare Process**

 Plaintiff also argues that the ALJ erred because he encouraged plaintiff to submit its claims for cervical and thoracic epidurals under the code for lumbar or caudal procedures. In his written decision, the ALJ noted that plaintiff refused such a course of action. Plaintiff is correct that such action would subject it to claims of Medicare fraud and abuse. Plaintiff argues that this shows the ALJ's lack of familiarity with the Medicare process and makes his decision errone-

ous. While the ALJ's position is obviously incorrect, he did not state that plaintiff's refusal was a deciding factor in his decision and he did not include this refusal as a relevant finding of fact based on the record. (Tr. at 22). The ALJ's decision is supported by substantial evidence which outweighs the minimal error caused by the ALJ's incorrect statement.

**IT IS THEREFORE ORDERED** that plaintiff's *Brief In Support Of Reversal Of Administrative Agency* (Doc. # 13) filed February 23, 1998 be and hereby is **DENIED.** Defendant's *Motion For An Order Affirming The Secretary* (Doc. # 16) filed May 18, 1998 is **SUSTAINED.**

---

they were new procedures. While this may have been a misrepresentation, it is not relevant. At the time of the statement, plaintiff was aware that defendant was not reimbursing for these procedures. Defendant's misrepresentation did not cause plaintiff to believe that it would continue to receive reimbursement and therefore does not constitute affirmative misconduct.